_____

VERALYN B.,

                    Plaintiff,

v.                                                5:18-CV-978 (ATB)

COMM'R OF SOC. SEC.,
                      Defendant.

_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON       STEVEN R. DOLSON, ESQ.
 Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.           GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

ANDREW T. BAXTER, United States Magistrate Judge

## DECISION and ORDER

Currently before the Court, is this Social Security action filed by Veralyn B. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g). This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

(Dkt. Nos. 4, 6.) The parties have each filed briefs (Dkt. Nos. 11 and 11) addressing the administrative record of the proceedings before the Commissioner. (Dkt. No. 8.)[1]

I.  **RELEVANT BACKGROUND**

   A.  **Procedural History and Factual Background**

On November 26, 2014, Plaintiff applied for Disability Insurance Benefits, alleging an onset date of February 1, 2012. (T. 16, 79.) She claimed disability due to a right foot impairment, lumbar spine impairment, asthma, allergies, diabetes, depression, headaches, hypertension, and hyperlipidemia. She subsequently amended her onset date to January 17, 2013. (T. 16.) Plaintiff was born in 1959, making her 53 years old as of the amended alleged onset date. She completed the twelfth grade, taking vocational classes including cosmetology training, and previously worked as a cashier, cosmetologist, personal care assistant, and warehouse worker.

Plaintiff's application was initially denied on April 20, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at two hearings before ALJ Gretchen Mary Greisler on October 27, 2016, and May 11, 2017, with a vocational expert ("VE") also testifying at the second hearing. (T. 33-77.) On June 23, 2017, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T. 13-32.) On July 12, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

### B. The ALJ's Decision

In her decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (T. 18.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 17, 2013, the amended alleged onset date. (*Id.*) The ALJ further found that Plaintiff had severe impairments including osteoarthritis of the right ankle/foot, degenerative disc disease of the lumbar spine, obesity, asthma, and neuropathy/neuritis of the lower extremities. (*Id.*) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 20-21.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively), 1.04 (disorders of the spine), 3.03 (asthma), and 11.14 (peripheral neuropathy). (*Id.*)

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work "except she can occasionally bend and crouch, frequently reach in all directions and cannot tolerate concentrated exposure to smoke, dust and other respiratory irritants." (T. 22.) The ALJ determined that Plaintiff was unable to perform any past relevant work but had acquired work skills from past relevant work which were transferable to another occupation, with jobs existing in significant numbers in the national economy. (T. 26-27.) The ALJ therefore concluded that Plaintiff had not been under a disability from the alleged onset date through the date of the ALJ's decision. (T. 27-28.)

### C. Issues in Contention

In her brief, Plaintiff contends the ALJ erred in finding that Plaintiff had transferrable skills and in determining, at Step Five of the sequential disability analysis, that Plaintiff could perform a job that existed in significant numbers in the national economy. (Dkt. No. 9, at 5-10.) Plaintiff also argues that the ALJ improperly substituted her own lay opinion over that of treating podiatrist, Christopher Fatti, DPM, who provided the only medical source opinion after Plaintiff's most recent foot surgery in September 2016. Plaintiff also contends that the ALJ erred by failing to fill a critical gap in the medical opinion evidence of record. (*Id*. at 10-11.)

In his brief, Defendant argues the ALJ appropriately determined that Plaintiff had transferrable skills and properly analyzed Plaintiff's ability to perform a particular job in that national economy, based on VE testimony. (Dkt. No. 11, at 6-10.) Defendant also contends that the ALJ properly weighed the testimonial and medical evidence to determine Plaintiff's RFC. (*Id*. at 10.)

For the reasons stated below, the Court finds that the ALJ improperly substituted her lay opinion over the only medical source opinion that followed Plaintiff's last foot surgery and failed to complete the record as necessary to make an RFC determination supported by substantial evidence. That finding is sufficient to warrant a remand in this action, such that the Court need not reach the issues regarding other alleged errors in the ALJ's Step Five analysis.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence. *See, e.g., Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Substantial Evidence Does Not Support the ALJ's Analysis of the Opinion Evidence and the Resulting RFC Determination

#### 1. Applicable Law

##### a. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y-. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta*, 737 F. Supp. at 183; *Sullivan v. Sec'y of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 09-CV-1120 (DNH/GHL), 2010 WL 3825629, *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

Under 20 C.F.R. § 404.1567(b), light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Social Security Ruling ("SSR") 83-10 elaborates on the requirements of light work, the relevant portions of which indicate that "the full range of light work requires standing or walking, off and on, for a total of approximately six hours in an eight-hour workday." 1983 WL 31251 at *6. "Frequent" lifting or carrying means occurring from one-third to two thirds of the time. *Id.* "Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk." *Id.* Light work generally requires occasional stooping or bending, occasional meaning up to one third of an eight hour day. *Ruback v. Astrue,* 2012 WL 2120473, * 10 (N.D.N.Y. June 11, 2012) (citations omitted).

### b. Treating Physician

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian*, 708 F.3d at 418). However, where the ALJ's reasoning and adherence to

8

the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527(c) is required. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran,* 362 F.3d at 31-32). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

### c. Review of Medical Evidence

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517P, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

### d. Developing the Record

It is well-settled that, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the record, whether or not a plaintiff is represented. *Melville*, 198 F.3d at 51. Prior to March of 2012, the regulations provided that when the treating physician's report contained "a conflict or ambiguity" that must be resolved, the ALJ was required to "seek additional evidence or clarification" from that source in order to fill in any clear gaps before rejecting the doctor's opinion. *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 504-505 (S.D.N.Y. 2014) (citing, *inter alia, Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010); 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2010)). This duty arose if the physician's report was "insufficiently explained, lacking in support, or inconsistent with the physician's other reports." *Id.*

Effective March 26, 2012, the Commissioner amended 20 C.F.R. § 404.1512 (e)(1) to remove former paragraph (e), together with the duty that it imposed on the ALJ to re-contact the treating physician under certain circumstances. *Lowry v. Astrue*, 474 F. App'x 801, 805 n. 2 (2d Cir. 2012) (citing How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. § 416.912) (deleting former paragraph (e) and redesignating former paragraph (f) as paragraph (e)). The Court applies the section in effect when the ALJ adjudicated Plaintiff's claim. *Id.* The ALJ's decision in this case is dated June 23, 2017; thus, the new section applies.

The new section allows the ALJ to choose the appropriate method for resolving insufficiencies or inconsistencies, which is designed to afford adjudicators "more flexibility." *Perrin v. Astrue*, 11-CV-5110, 2012 WL 4793543, at *3 n.3 (E.D.N.Y. Oct. 9, 2012) (citing How

We Collect and Consider Evidence of Disability, *supra*). The ALJ must attempt to resolve the inconsistency or insufficiency by taking one or more of the following approaches:

> (1) recontacting the treating physician or other medical source, (2) requesting additional existing records, (3) asking the claimant to undergo a consultative examination, or (4) asking the claimant or others for further information.

*Id*. (citing 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4)).

Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the claimant's RFC. *Covey v. Colvin*, 13-CV-6602, 2015 WL 1541864, at *13 (W.D.N.Y. Apr. 6, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013)). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

### 2. Relevant Medical Evidence

At the administrative hearing in October 2016, Plaintiff testified she was healing from her fourth foot surgery. (T. 66-68.) The record indicates that Plaintiff had multiple surgeries addressing various issues with her right foot, including on January 17, 2013, December 15, 2014, and September 9, 2016.[2] (T. 22-23, 461, 503, 516-18, 538, 735-36.)

The ALJ noted that podiatrist Freddie Edelman, DPM, who performed foot surgery on Plaintiff in January 2013, approved her to return to work at various times in 2013, as reflected in

---

[2] Plaintiff testified at the October 2016 administrative hearing that her first foot operation was on January 17, 2013. (T. 54.) She reported to the consultative examiners in April 2015 that she had undergone foot surgeries in 2012 and 2014. (T. 524, 529.)

treatment notes. (T. 25 (citing T. 290-308, 444-59).) The ALJ gave the podiatrist's statements little weight because of their temporary nature, the lack of detail in his assessments, as well as the subsequent evidence from after 2013.

During an April 2015 consultative examination by Elke Lorensen, M.D., Plaintiff reported having two previous surgeries on her right foot. (T. 524.) Dr. Lorensen opined that Plaintiff had no gross limitations in sitting, standing, walking, or handling small objects with the hands, but had moderate restrictions in bending, lifting, reaching, and squatting, and should avoid smoke, dust, and other respiratory irritants. (T. 527.) The ALJ afforded this opinion partial weight, noting that, based on Plaintiff's "multiple foot surgeries, the evidence supports at least some limitations on standing and walking." (T. 25-26.)

Plaintiff's treating podiatrist since 2014, Dr. Fatti, opined in various treatment notes that Plaintiff had a total disability, that she had a permanent partial disability such that she was limited to seated work only, or that she should remain out of work until further notice. (T. 25, 535-69, 716-42.) The ALJ explained that she had gave these opinions little weight for several reasons including that (a) they were "not detailed function by function assessments and so [were] of limited use in a Social Security disability proceeding[,]" (b) permanent partial or total disability were classifications from Workers' Compensation with a different disability standard and therefore had no meaning within the context of Social Security disability, (c) the clinical findings including those from Dr. Fatti did not support a total disability, (d) Plaintiff's own representations of activities of daily living did not support Dr. Fatti's assessments, and (e) several of Dr. Fatti's opinions were "temporary and expressly intended to be in effect only to the next office visit." (T. 25.) The ALJ found that limiting Plaintiff to a seated job was not fully supported by the evidence. (*Id.*)

12

### 3. Analysis

Plaintiff contends that the ALJ substituted her own lay opinion in rejecting the opinion of treating podiatrist, Dr. Fatti, which was the only opinion from an acceptable medical source following Plaintiff's last foot surgery in September 2016.[3] (Dkt. No. 9, at 10-11.) Plaintiff argues that this rejection created an evidentiary deficit that the ALJ was under a duty to fill. (*Id.* at 11.) The Court finds these arguments persuasive for the following reasons.

The ALJ lacked sufficient medical opinion evidence, at least for the period following Plaintiff's September 2016 foot surgery, to determine that she was capable of meeting the functional requirements of the ALJ's RFC--a modified range of light work. (T. 22.) In March 2017, six months after Plaintiff's surgery, Dr. Fatti noted that she was still complaining of pain and swelling and opined that she was "only capable right now of seated work[,] "[m]ore ambulatory work will cause swelling which we are trying to avoid." (T. 717, 721.) Dr. Fatti also stated, in the same treatment note that Plaintiff was "on partial disability marked/severe" and was "only capable of seated work." (T. 721.) There was no other medical opinion of record regarding Plaintiff's functional limitations relating to the crucial period after her last foot surgery. "[W]hen a medical opinion stands uncontradicted, '[a] circumstantial critique by nonphysicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome' it." *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)); *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 121 (2d Cir. July 6, 2018) ("[W]hile a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible,

---

[3] "Acceptable medical sources" include podiatrists. *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a)).

must be overwhelmingly compelling in order to overcome a medical opinion.") (citing *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000)).

Plaintiff's testimony at the administrative hearing supports Dr. Fatti's direction that Plaintiff avoid ambulatory work in an attempt to avoid swelling. Plaintiff testified that she elevated her leg above her heart to help with the pain, and that being in a seated position for extended periods of time caused additional pain with swelling and felt like the blood stayed in her foot. (T. 68.)

The ALJ's critique that some of Dr. Fatti's assessments were temporary in nature was suspect, and highlights the need for additional or clarifying medical opinion evidence. (T. 25.) Dr. Fatti's opinion in January 2016 that Plaintiff had a marked/severe *permanent* partial disability that limited her to only seated work suggested that this limitation was not temporary. (T. 543.) In December 2016, Dr. Fatti found a total disability until Plaintiff's next visit or further notice, noting that the prognosis for her September 2016 foot surgery was still good but that she was "having pretty significant pain when she is on her feet long hours." (T. 725.) In March 2017--more than a year after a similar, initial opinion--Dr. Fatti repeated his assessment of a marked/severe partial disability limiting Plaintiff to only seated work. (T. 721.) Dr. Fatti's inclusion of the words "right now," when discussing Plaintiff's limitation to seated work elsewhere in his treatment notes, does suggest an ambiguity. However, the ALJ should have attempted to clarify that ambiguity before dismissing the only medical source opinion following Plaintiff's last surgery. (*Id*.) Similarly, to the extent the ALJ found that Dr. Fatti used Workers' Compensation terminology not relevant to Social Security disability proceedings, she should have requested a medical source opinion from Dr. Fatti using more suitable functional standards.

Although the ALJ correctly noted that Dr. Fatti's March 2017 and other opinions did not contain a function-by-function assessment of Plaintiff's limitations, the ALJ had no other medical opinion evidence that might support his RFC determination for a modified range of light work, at least after Plaintiff's last surgery in September 2016. (T. 22-26.) Dr. Lorensen's opinions were based on a one-time consultative examination in April 2015, and the ALJ only partially relied on this consulting doctor's opinion, concluding Plaintiff's capacity for standing and walking were more limited than Dr. Lorensen found. (T. 25-26.) The ALJ gave little weight to Dr. Edelman's 2013 opinions based, inter alia, on the subsequent medical evidence. (T. 25.) "While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] or testified before him.'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

Given Plaintiff's longstanding and ongoing issues with her right foot, which required multiple surgeries, and the ALJ's stated reservations about the opinions of Dr. Lorensen and Dr. Edelman, the ALJ should have recognized additional medical opinion evidence was required. To be sure, it is typically within an ALJ's discretion whether to seek updated or additional medical opinion evidence. However, the nature of Plaintiff's impairments and the lack of sufficient medical opinion evidence regarding Plaintiff's functioning created a gap in the evidence which the ALJ did not adequately address. This gap prevented the ALJ from properly determining an RFC supported by substantial evidence, due to the lack of a function-by-function assessment of Plaintiff's physical abilities, particularly following her most recent foot surgery. On the current record, it is unclear how the ALJ could conduct a reasoned assessment without improperly relying on her own lay opinion in determining Plaintiff's RFC.

Given the nature of these treating source assessments, particularly the fact that Dr. Fatti's March 2017 assessment was the only opinion evidence following Plaintiff's September 2016 foot surgery, and the ALJ's failure to properly develop the record, the Court finds the ALJ's RFC determination is not supported by substantial evidence. The ALJ's errors in weighing the medical evidence and properly developing the record warrant remand.[4]

### B. Plaintiff's Arguments Regarding the ALJ's Findings at Step Five

Because remand is necessary to address the ALJ's inadequate analysis of the medical opinion evidence and her failure to develop the record, the Court declines to address Plaintiff's other argument regarding the ALJ's errors at Step Five. (Dkt. No. 9, at 5-10.) However, upon remand, the ALJ should conduct a new analysis at Step Five, cognizant of the obligation to identify and obtain a reasonable explanation for any apparent conflicts between occupational evidence provided by a VE and information in the Dictionary of Occupational Titles, including its companion publication, the Selected Characteristics of Occupations. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92-93 & n.2 (2d Cir. 2019).

### C. The Nature of Remand

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally

---

[4] It should be noted that, during the testimony of the VE, the ALJ explored whether there were other jobs in the national economy that Plaintiff could perform based on a sedentary, as opposed to a light-work RFC. (T. 45, 47.) Given Plaintiff's "advanced age" at the time of the ALJ's consideration of her claim, the ALJ had to find that Plaintiff had transferrable skills from prior work that would enable her to perform new occupations. (T. 26-27.) The VE testified that the only occupation to which Plaintiff's prior skills would transfer was the light work occupation of Personal Attendant, and that there were no sedentary occupations that Plaintiff could perform based on her prior skills. (T. 44-47.) Accordingly, a determination that Plaintiff was capable of performing other work in the national economy and, therefore, not disabled, could not be based on a sedentary RFC that might have been consistent with Dr. Fatti's opinions.

appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  On remand, the Commissioner, perhaps based on additional medical opinion evidence and/or the input of a medical expert, may be able to support a determination that Plaintiff was not disabled during some or all of the time period since the amended onset date.  Thus, this Court cannot conclude that substantial evidence on the record as a whole indicates that the Plaintiff was disabled during the relevant time period, and I cannot recommend a remand solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**ACCORDINGLY**, it is

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for appropriate development of the record, a proper evaluation of the opinions of the treating physicians and other medical and non-medical evidence, the determination of the Plaintiff's RFC and her ability to perform other jobs at Step Five during the relevant time period, and further proceedings consistent with this Decision.

Dated: November 8, 2019

Andrew T. Baxter
U.S. Magistrate Judge